The next case today is Luz González-Bermudez v. Abbott Laboratories PR Inc. at all. Appeal number 192249. Attorney Seitz. May it please the court. Virginia Seitz on behalf of Abbott Laboratories Puerto Rico and Kim Perez. May I reserve two minutes for rebuttal? You may. Appellants are entitled to The record does not contain evidence from which a reasonable jury could find that any demotion was based on or related to age as this court's case law clearly requires. In response, plaintiff first argues the jury could have inferred age discrimination because it did not believe Abbott's explanation for plaintiff's demotion or thought Abbott's witnesses were evasive. None of this ties the demotion to age. This court has been clear that the jury must be able to find not just that the employer's explanation was a sham but that it was a sham intended to cover up the employer's real motive of age discrimination. Plaintiff argues the jury could have inferred age discrimination because two younger employees in different jobs with different performance histories were not demoted when situated to material respects and there is no such evidence here. Here it is undisputed that before plaintiff's demotion she asked to be relieved of job duties and responsibilities and was in fact relieved of those duties. Nothing in the record suggests her proposed comparators. Again, different work histories performing different jobs had made similar requests or were otherwise similarly situated to plaintiff. As this court, including two members of this panel, explained in Santana Vargos versus Banco Santander, it is not permissible to infer discrimination because of age based on this kind of comparison without showing that the comparative parties are similarly situated. To find evidence at age discrimination there must be evidence that appellants are also entitled to judgment on plaintiff's claims that Abbott retaliated against her by denying her promotions because she complained about alleged age discrimination. With respect to the senior product manager position, it is undisputed that plaintiff decided not to do the marketing presentation that all finalists for the position were required to do. Plaintiff makes no claim that she was coerced. Excuse me, counselor. The plaintiff alleged that no one had ever been asked to make such a performance demonstration before this and that because she had been with Abbott for so many years they were aware of her capabilities. That, your honor, does not excuse plaintiff from the requirement to perform the presentation if Abbott, as part of its legitimate business judgment, decided to impose a presentation requirement for this particular position. It does not allow an inference of discrimination or retaliation that this presentation requirement is proposed. The records show that Abbott had previously used this presentation requirement for other positions and had used it successfully. But in any event, plaintiff's subjective belief that she shouldn't have had to perform it or that she would not have been selected does not allow her to withdraw from the application process and then claim that Abbott would have acted unlawfully if she had finished the process. If a plaintiff can decline to fulfill the requirements for applying for a promotion and then claim retaliation based on its denial, she can exempt herself essentially from competition for all promotions. Ms. Seitz, I had the same concern that Judge Thompson did. Could the jury find that this was the first time Abbott had used it for this type of position and the reason it used it was to retaliate against her for her complaints? So you sort of glanced over that and you're over to a different argument about how she took herself out of the process. She says, yeah, I took myself out of the process because I thought the whole thing was set up to retaliate against me. So can you talk a bit more, please? Sure. What the record evidence shows is that Abbott had previously used the presentation requirement in seeking other positions. This senior product manager position announcement did come with a decision recommended by, as the evidence showed, recommended by a senior manager at Abbott because this kind of presentation requirement had been effective for Abbott in demonstrating the credentials of employees to do the kind of marketing job that this entailed. There is no inference of discrimination possible from an ordinary business decision to impose a presentation requirement on an application. It's not an inference of discrimination. It's an inference of retaliation. It would be unsupported by the record to find that this requirement was imposed for anything other than a legitimate business decision about the best way to screen applicants and candidates for this job. In other situations where they've used it, has there likewise been no prior notice that this would take place the next day? Your Honor, I don't believe the record demonstrates that there was no prior notice that the requirement would, the presentation would take place the next day. And in fact, she testified to that. I'm sorry, but she testified to that evidence. Agreed. Plaintiff had prepared her presentation and arrived to conduct her presentation. What she testified was that she. That's not the question. Her testimony was that when she had her interview, she went into that interview with no prior notice that she would be asked to present the following day this presentation. Because to her knowledge, it hadn't been done before or positioned like this. Your Honor, accepting that that was her testimony, I think that she then had a day to prepare a marketing presentation and she arrived the next day to make that marketing presentation. She decided not to. The question is, you said that you've used this methodology in the past. The question is, has the procedure gone similarly where the applicants don't know until the day of the first interview that they would be expected to present the following day? There's no evidence either way on that point in the record, Your Honor. Is there any, is there any evidence that this performance added requirement was a bad thing for her? And here's why I ask. Imagine that she, before working for AVID, had been a pro basketball player. And at the last minute, they added on to the interview process that you had to shoot five foul shots to see if you got the job. I think we would be, and then she refused to do it. I think we'd be hard pressed to find that that was discrimination against her or an adverse retaliation. On the other hand, suppose she was in a wheelchair and they added suddenly at the last minute, you've got to do a dunk shot on a 10-foot basket. I think we'd be pretty suspicious that that's retaliation. So I'm trying to think, what is this added requirement more like? Is it like my first example or is it like my second example? Well, Your Honors, of course, we feel that it's much more like your first example. It's reasonably related to the position that she was about to take on to senior product manager to be able to do a marketing presentation. It's closely related to the requirements for the job. And so we think it was a legitimate business judgment to impose that requirement. And there's nothing in her personal situation that would suggest that she would be unable to do a marketing presentation in light of her past experience at AVID. And indeed, she did not make that argument. Her argument was she was embarrassed to have to do it along with outside applicants and that she felt or speculated that she would not be selected. And this kind of speculation is simply not a reasonable basis to withdraw from an application process that's legitimately connected to the position. Your Honors, on all our other arguments, I will rest on our briefs. I just have another question. I have one more question. I think she also indicated that the normal process at AVID was that internal applicants were given a heads up before a position was posted and that wasn't done here. Yes, her argument was that it was retaliation for AVID to have posted or looked outside the company for this position because that was not AVID's normal practice. But in this case, the record is undisputed that AVID looked outside the company to fill this position six weeks before a plaintiff filed her claim of age discrimination. And so the timing of that simply doesn't allow the inference that this was in retaliation for her filing an AJAC, whether it was AVID's normal practice or not. Any further questions? No. Thank you, counsel. Attorney Seitz, you can mute your audio and video at this time. And Attorney Gonzalez, please unmute and you may proceed. Good afternoon. May it please the court? Proceed. Okay. First, before I go into the questions that you were asking, because I think there's a few more points that need to be made so you have a full picture, I want to make two points clear here. Number one is that if you look at the verdict form in this case, the third question is an independent finding of liability under Puerto Rico law 115 that has not been challenged on appeal. The only reference that AVID makes as to that retaliation claim is a footnote in his brief, and we know under Sanino and Sotofon Alleda that that is not enough. So that argument is waived. The other point that we want to make is that the question is whether this case needs to be decided on employment law or on waiver law. Because I invite the court to look at the two Rule 50 motions that were presented by AVID, and in none of them do they raise the age discrimination claim. They started with, you know, to discuss it and they jumped, they made a leap of faith and mixed it with the retaliation claims. You will be able to see that. As a matter of fact, the first one is, I will give you the... Let's move this along. We will look at the Rule 50 motions, but assume at arguendo that the waiver argument doesn't persuade us. Can you get to your additional facts that you think we need to know, both as to age discrimination and as to retaliation? Yes, Your Honor. First, I'm going to speak about the senior product manager position, which is the one you were asking regarding the presentation. And that is not the only fact that was going around this process. The first interviews were on December 19. Ten days before, there was a meeting by Ms. Mendez, Ms. Harris, Ms. Perez, and Ms. Adams, which was from Human Resources, where they discussed this process. There was evidence at trial presented of the notes taken of that meeting just ten days before the interviews, and there was no mention whatsoever of a case study or a presentation. There was mention that they were going to meet with the lawyers. The other point that even though each one of Ms. Adams, the Human Resources Director, Mr. Harris, the head of ABOT, Ms. Kim Perez, the hiring manager, and the Human Resources Director, was that they were talking about her discrimination claim in the context of the selection process. If that is not something from which a jury can make an inference, and the court, the district court, made a finding saying that it was completely reasonable for them to find that it was important in the selection process when they admitted that it was irrelevant. I'll defer to Judge Kayada, then I'll ask my question. Okay, so you make a point that you could infer a motive in that point. The difficulty I'm having is if someone doesn't apply for a job, it seems really hard to say that the employer retaliated against them by not giving them the job. Well, here she applied, but at the last moment, she refused to complete what seems to be a facially neutral, in fact, perhaps even if we believe her beneficial to her element of the employment process, and she refused to complete it. So how do we find that the employer didn't give her the job as an act of retaliation when she didn't even complete the process of trying to get the job? Your Honor, first, because the process was, it was very, there were problems with the process. I'm going to begin with, it is correct that the fact that the position was published in LinkedIn, not enough for a retaliation inference, but certainly it is a violation of Abbott's policy, which there was evidence at trial that internal candidates who were qualified for that position were to be given preference. She was a finalist. Mr. Harris says that in his testimony that she was being considered. She was a finalist because she was given the chance to participate. So actually, she was qualified for the position, but she knew, she found out about the posting in LinkedIn from someone else when Abbott, its policy was always to post the positions that were available, and that was not done in this case. So that was already a deviation from their policy. Counsel, you're not answering the question. This is a facially neutral, perfectly understandable policy. You want to be a sales manager, we'd like to see you do a presentation. What is the evidence, and then she pulls out of it on her own, what is the evidence that that is motivated by retaliation? Didn't everybody else have to meet this presentation requirement? The only two other candidates were external candidates who have never made presentations at Abbott. Four minutes remaining. Thank you. Ms. Gonzalez had held the position at Abbott before of senior product manager. She had been a national sales representative. All the more reason why this doesn't hurt her to have to make such a presentation. Before the presentation and even the interviews, she was being treated different once we've sent our letter claiming that she was being discriminated against. The discrimination  claim isn't that, I guess, maybe you have another claim, but we're focusing on the claim that she didn't get this job because they retaliated against her by not giving her this job. That's what I'm having a problem with. She doesn't even complete the application process. Indeed, even if she thought the performance thing was wrong, don't we want employees to do it, and then if they get turned down and they don't think that was a proper criteria, they think it was imposed, then they can sue over it, but she didn't even take it. What difference does it make that they might have had some motive on something else? Your Honor, it makes a lot of difference, and we also have to see it in this case. This is a jury decision. The fact was that the issue was presented to the jury whether it was reasonable for her, in light of the evidence that was presented, to withdraw from the presentation. I'm not sure that's the right question. The question is whether you have sufficient evidence of retaliation. How is withdrawing, whether it's reasonable or not, when there's an evenly applied requirement of which she is told, and one that on its face does not disadvantage her, she should have been able to ace it, and she pulls out? Well, because, Your Honor, if we look at it, I'll use, as a matter of fact, I think I used that in my closing argument, something similar to what Judge Cayapa used, which was the fact that the only difference, the presentation, was something else that was added at the end, and the difference between the two of them, the three of them, the two external candidates and her, was that she had claimed discrimination and had mentioned her intention to sue Abbott. So, if she was to climb a mountain to get there, it would seem that if the three of them had to climb it, it was fine, but not if she only had one leg. She would certainly be at a disadvantage, and certainly she was not... I'm sorry, I simply don't understand. Are you saying the other two candidates did not have to make a presentation? They did have to make a presentation, Your Honor. Okay, and are you saying that she was disadvantaged because they got more notice of the need to make a presentation than she did? She was for one simple reason. If Abbott had followed its policies, that position would have been offered to her. No, answer my question. Well, Your Honor, if you put it that way, I have to say yes, it seems like a facially neutral, but the facts are not facially neutral because the three candidates were not in the same position. Are you saying the mountain that the other two did not have to climb is the prior discussion about her discrimination claim? No, what I'm trying to say with the mountain is that the three have to climb it, but if you take into consideration that she only has one leg and the other two are not, she's going to be at a disadvantage. But is the one leg her discrimination claim? Are you trying to figure out what the one leg is? The one leg is her having manifested an intention to sue Abbott for age discrimination, which the other two employees who were external did not have, and Abbott was taking that into consideration. I found by the district judge. You have the other claim, too. You have your age discrimination claim itself, and I understand you've made a strong waiver argument that will look at the full 50 motions. To protect you, though, assume that we were to consider there wasn't a waiver, and we look at that claim on the merits. Do you have any evidence to support the 2013, I think it was, demotion as an instance of age discrimination other than the two other employees that you've mentioned weren't demoted? Your Honor, the problem is that that analysis of the district court made of whether they were similarly situated is what brings up the presumption of discrimination. What's really outstanding is that Abbott does not even discuss the precedent in this case, which are the cases of Perkins, Dartmouth Review, and Velez v. Thurman. You're not answering the question. The argument was that these younger employees were not in the least similarly situated. They had not requested to be relieved from certain duties. They were in different jobs. So you began to say the district court was correct in saying they were similarly situated. What's your argument? I agree with the district court that they were fair congeners. Well, of course you do, but why? Because they were on the same boat, just like the court says, because they were the only three employees that were affected by the initial elimination of the position. Then she was the only one out of the three that received a second adverse employment action, which I call the additional demotion. And the witnesses at trial tried to avoid having to admit it, but there's a document, plaintiff's exhibit number 15, that leaves it clear that it was a demotion on March 18, 2013. So she had an additional adverse employment action. The fact that... Okay, you have 30 seconds to answer my question. Why are they similarly situated? They are similarly situated because they were affected by one adverse action from a reorganization. None of them applied for positions which they were supposed to apply for positions. They performed their duties. And there's an issue as to whether, which was discussed, and the court also made a finding as to whether the position that was created for plaintiff as HCP institutional marketing manager was a position that was made for her to fail. Okay, thank you. Thank you very much. Thank you, Attorney Gonzalez. You can mute your audio and video device. Attorney Seitz, you have a two-minute rebuttal. Your Honors, we addressed the argument that we waived the claim we're making for JNOV on the H claim fully in our briefs, and we're happy to rest on those briefs. I do want to address the argument that by consulting with counsel, an inference of retaliation in the denial of the promotion could be drawn. We think company decision-makers are allowed and indeed encouraged to seek guidance from counsel, and that in fact, allowing a jury to infer retaliation from that ordinary business precaution would put employers in an impossible position whenever they receive a claim of discrimination. We think the fact that there was a discussion that plaintiff had filed a claim is irrelevant to and cannot show retaliation against plaintiff by denying her that promotion. With respect to the SIF claim, it is a claim. Was there an internal posting of that 16 position? Yes, there was. It came after the LinkedIn posting, which is what drew the external applicants for the position, but that LinkedIn posting and that decision to look outside the company to fill that position was made six weeks prior to plaintiff filing her claim of discrimination, and thus it could not have been evidence of retaliation against plaintiff. Is she using that to support her claim of discrimination also? No, Your Honor, she did not. I thought she did, but certainly check the record. The she did not support her. She did not make a claim of discrimination with respect to the senior product manager promotion. Perhaps I'm not understanding Your Honor's question. We'll check the record. Thank you. Thank you, counsel. Thank you. That ends arguments in this case. Attorney Seitz and Attorney Gonzalez, you should disconnect from the hearing at this time.